# THE HOME INSURANCE COMPANY OF NEW YORK

*v.*

## JOHN HECK.

1. INSURANCE—*right to cancel policy.* Where a policy of insurance against fire provided that the insurers might cancel the same on notice to the assured and a return of the unearned premium, it seems the mere fact that the property insured was in greater danger of fire when the offer was made to refund the premium than when the policy was issued, would not prevent the company from rescinding.

2. But an insurer against fire can not, when the fire is approaching the property insured, under such a clause, cancel the policy; and when the danger is threatening and imminent from an approaching fire, the right to terminate the policy upon notice will not depend upon the intentions or good faith with which the agent of the insurer acts. And the fact that the property was destroyed by fire coming from a different quarter than that which caused apprehension at the time of giving notice of a cancellation of the policy, will make no difference, if the danger from that quarter was imminent at the time.

3. SAME—*instruction.* In such a case as this, an instruction that, if the agent of the company, upon examining the wood described in the policy, and the manner in which it was being cared for, honestly came to the conclusion that it was not being protected against the fires then burning in the surrounding clearings and forests, with that degree of care which a man of ordinary prudence and caution would exhibit in the protection of his own property under similar circumstances, and that in consequence of such fact, there was danger that the wood would be destroyed by said fires, then the agent was justified, for such reason, in terminating the policy by giving notice, etc., was *held* to have been properly refused as misleading, by taking from the jury all consideration of the facts existing at the time the fire was raging, and placing the right to cancel the policy upon the honest belief of the agent that the wood was not properly cared for.

4. REMOVAL OF CAUSE TO U. S. COURT—*bill of exceptions necessary.* Where the petition and affidavit for the transfer of a pending suit from the State to the United States court, are not made a part of the record by a bill of exceptions, this court can not regard them.

5. SALE—*when title passes to vendee.* Where a party, under his contract with a railroad company for the sale of wood, hauled and piled the same along the track of the road, but no one had received the same, and the company, when it needed wood, measured and took such quantity as it saw fit

from such pile, or that of others, and the agent only reported such as was thus measured and taken, and gave vouchers therefor: *Held*, that the title to such wood not measured and accepted did not vest in the company, but remained in the party furnishing the same; and when a pile was broken and a quantity taken from it and measured to the company, that specific quantity belonged to the company, and nothing more.

APPEAL from the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

Messrs. STORRS & VANARMAN, for the appellant.

Mr. O. B. SANSUM, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit, in the Cook circuit court, on a policy of insurance written by the Home Insurance Company of New York, on the 3d day of October, 1871, on a quantity of cord wood, cut, corded and piled by the plaintiff on the line of the Pittsburgh, Cincinnati and St. Louis railroad, in the State of Indiana.

The defense was, that the insurance company had notified the assured of a cancellation of the policy, as authorized by the terms of the policy.

The cause was tried by a jury, and resulted in a verdict for the plaintiff. A motion for a new trial having been overruled, there was judgment on the verdict. To reverse this judgment the defendant appeals.

The first point made by appellant is the refusal of the court to transfer the cause, on the affidavit of the defendant, to the United States court, in pursuance of the act of Congress of March 2, 1867.

The petition and affidavit are not made a part of the record by bill of exceptions, consequently this court can not regard them.

Appellant raises several questions upon the rulings of the court upon the instructions, and first, appellant complains that the plaintiff's first instruction was erroneous, and should not have been given.

That instruction is as follows:

"Whether defendant had the right to cancel the policy in suit depends upon the condition, with reference to danger of fire, in which the wood was in at the time defendant's agent, Russell, notified the witness Lane that he would cancel said policy.

"If, at that time, the wood was in greater danger of fire than it was on the third day of October, 1871, when the contract was made, then defendant had not the right to rescind the contract and cancel the policy; but if it was in no greater danger of fire on Saturday than it was when the contract was made, then the defendant had the right to rescind. Whether it was or was not in greater danger at that time, is a question for the jury to determine.

"Although you should find that at the time defendant's agent, Russell, notified the witness Lane that he would cancel the policy, the wood was not then in greater danger from fire, still the defendant is not entitled to treat the policy as canceled, unless the premium to be returned to plaintiff was actually tendered, that is, shown to plaintiff, or an agent authorized to receive it for him, unless the actual tender or showing of the money was distinctly waived by the plaintiff or such agent.

"And upon the question of tender, the burden is upon the defendant to establish that fact by evidence preponderating in its favor; and, if the evidence is equally balanced upon that point, you must find that the policy was not canceled."

It is of the first two clauses of this instruction appellants complain. They contend that the right to cancel the policy did not depend upon the condition in which the wood was at the time of the notice of cancellation.

Taking the two clauses together as the instruction, it asserts this principle of law: If the wood insured was in greater danger of fire when the offer to refund the premium was made,

8—65TH ILL.

than it was when the policy was issued, the company could not rescind.

We think this is laying down the law too broadly, for, by the terms of the policy, the insurer had a right to rescind, on notice and a return of the unearned premium.

It can not be claimed, however, that an insurer against fire can, when the fire is approaching the property insured, cancel the policy. This would be acting in bad faith, and would not be justified by the law of the contract. Insurance is a contract of indemnity, the basis of which is, or ought to be, good faith on both sides. Of what avail would it be, to take a policy against fire, to permit its cancellation when the fire is approaching?

Appellants also complain that the court refused to give the first, second and fourth instructions asked by them.

The first is as follows:

"The jury are instructed that, by the terms of the policy of insurance, the defendant had, at any time before the loss or danger of the property insured, the right to terminate its liability by giving notice thereof to the plaintiff, and by the repayment of the premium. If, therefore, the jury believe, from the evidence in the case, that during the life of the policy, and before the loss had occurred, the defendant, through its agent, in good faith, notified the plaintiff, or its agent, of its intention to terminate and cancel the policy; and returned, or offered to return the premium, then the verdict must be for the defendant."

The objection to this instruction is obvious. It makes the right of cancellation depend upon an intention entertained by the agent, in good faith, to cancel the policy. It leaves out of view threatening and imminent danger which may environ the insured property. As appellant's counsel remark in another part of their brief, "No court would permit an insurance company to declare a policy upon a certain building cancelled when the adjoining building was in flames."

The jury are required by this instruction—the second clause of it—to consider, not the circumstances surrounding the property insured, but only the good faith with which the agent may have given the notice of cancellation.

The next instruction refused is as follows:

"The jury are instructed that, if they believe, from the evidence in the case, that the wood in question was destroyed by fire coming from an entirely different direction, or from a different source from that from which danger was apprehended at the time the notice was given of the termination of the policy, then the defendant had the right to terminate the policy by giving notice thereof to the plaintiff or his agent, and by refunding, or offering to refund, the premium paid."

This instruction is coupled in the argument of appellant's counsel with the following:

"The law will not presume, and the jury, in the absence of any evidence in the case, will not be justified in presuming, that an attempt to cancel the policy in question, and an offer to return the premium paid thereon, was made in bad faith. If the jury believe, from the evidence in this case, that Mr. Russell, acting as the agent of the defendant, on the fifth day of October, 1871, upon examining the wood described in the policy, and the manner in which it was being cared for, honestly came to the conclusion that it was not being protected against the fires then burning in the surrounding clearings and forests, with that degree of care which a man of ordinary prudence and caution would exhibit in the protection of his own property under similar circumstances; and that, in consequence of such want of ordinary prudence and caution, there was danger that said wood would be destroyed by said fires, then the jury are instructed that he would be justified, for that reason, in terminating the policy by giving notice of the fact to the plaintiff, or his agent, and returning or offering to return the premium."

In regard to the first of these instructions, if there was an impending fire from a quarter different from the one which first caused apprehension, the insurer would have no right to cancel the policy. It would be an act done in the face of a threatened and approaching danger, and which the insurers were not competent to do. Such a right would render policies of insurance valueless.

The other instruction takes away from the jury all consideration of the facts existing at the time the fire was raging, and places the right to cancel the policy solely upon the honest belief of Russell that the wood was not properly cared for. It was well calculated to mislead the jury, and to fix their attention upon the single fact of the honest purpose of Russell.

We think the court properly refused these instructions.

Another point of importance is made by appellant, and that is, as to the ownership of this property.

Appellant contends it was the property of the railroad company. If so, appellee has no right to recover of appellant.

What are the facts?

The wood was cut by appellee on his own land, hauled to the line of the Pittsburgh, Cincinnati and St. Louis railroad, corded and piled at Kokomo, a station on that road, and he testifies it was his wood when insured.

William Jones testified that appellee employed him to watch the wood, the day it was insured; watched it until it was burned.

D. D. Rudolph, the fuel agent of this railroad, testifies he knows when Heck had a lot of wood; knows when it was burned; took account of and measured the place where the wood had been, to ascertain how much had been burned; measured wood for Heck on the same ground three or four times before; this wood was gotten out by Heck for the use of the railroad company; took out wood each month; there was other wood besides Heck's there, some of which was destroyed; the railroad company had 1200 cords destroyed; verbal contract with Heck made in 1868; Heck was to deliver

wood on the line of the railroad between Kokomo and Galveston; that was part of the contract, and witness was to pay so much for it; measured it when it was taken out; was to measure it and send vouchers to the company; the wood, when delivered, was not under the control of the company; we could take it when we chose, without saying a word to Heck; we did not exercise any control over it until we received it; the wood that was burned had been there a year; they were hauling all the time, and we taking it away, from any pile that suited us; it was not delivered until we received it; we received it when measured and marked; had never measured this wood; measured it after it was burned, by order of the superintendent; we had the right to take any of the wood, when piled, or all, if we wanted it; as soon as it was racked and piled we could take it and haul it off whenever we 'pleased; we had been taking and using the wood as we wanted it ever since Heck commenced delivering, in 1868; had a habit of putting on the wood the names of the men who delivered it, when we wanted it; when witness measured wood he made a voucher and sent it to the general office, and it was paid in twenty to sixty days time; the delivery was made by Heck to the railroad company when wood was measured; we never paid for the wood that was burned.

We think this testimony most conclusively settles the question of ownership, and the trouble has arisen from a misuse of the word "delivered." It is very evident the wood was the property of appellee when cut and hauled and piled at Kokomo. As a mass, it was his. It was deposited, not delivered, on the line of the railroad for the convenience of the road, not delivered to them as their property, for there was no one present to accept it. It was delivered only in such quantities as the road wanted, and the quantity was measured to them from any pile the company or its agent might select.

Will it be pretended that the railroad company could maintain trover for any one of these piles of wood, it not having

been measured to them and received by them? No one will so insist.

As unmeasured piles, as these were, they were the property of appellee. When a pile was broken in upon, and a quantity taken from it and measured to the company, that specific quantity belonged to the railroad company, and nothing more..

Suppose, after Heck had piled the wood, the company did not choose to provide their fuel from any one of his piles? What then? Whose wood would it be under the contract testified to by Rudolph, their fuel agent? Certainly not that of the company.

Were the company under an engagement to take all the wood Heck deposited there, and they declined doing so, Heck's remedy would be on the contract, and he could recover damages for its breach, but the title to the wood would remain in Heck.

There is not, in our judgment, a particle of proof to establish title in these piles of wood, covered by this policy, in the railroad company.

In this connection, appellant complains that instruction eleven, asked by it, was not given. The instruction is as follows:

" 11. If the jury believe, from the evidence in this case, that, before the issuance of the policy in question, the plaintiff had entered into an agreement with the railroad company, by which he had agreed to sell to them a quantity of wood at a certain fixed price per cord, to be piled and delivered on the line of said railroad, between Kokomo and Galveston; that in pursuance of such agreement the wood in question was piled and corded on the line of said road, and delivered to said railroad company; that the said railroad company, by the terms of such agreement, had the right to take such wood at such times and in such quantities as it saw fit, and agreed to measure the same when taken, and, within a certain stipulated time thereafter, pay for the same; then the jury are

instructed that the title to all said wood thus piled and delivered on the line of said railroad passed to said railroad company; that said company is liable to the plaintiff therefor, and the verdict in this case must be for the defendant."

This instruction might have been given without any prejudice to appellee's case, had the court modified it by telling the jury what constituted a delivery, and that there was no evidence of a delivery of the wood in cords or piles. But as directing the attention of the jury to the ownership of the wood, that had been done by appellant's fourth and fifth instructions, particularly the fifth, which is as follows:

"If the jury believe, from the evidence in the case, that, before the 8th day of October, 1871, the wood in question had been actually sold by the plaintiff to the railroad company, and that plaintiff had ceased to have any interest in it, then the verdict must be for the defendant."

To decide this question under this instruction, the jury must have taken into consideration all the elements contained in the eleventh instruction, which was refused.

It is idle to pretend there was a sale and delivery of these different piles of wood to the railroad company. They were always the property of appellee. Appellant took a risk on them at a high premium, and it ought to be held to a strict accountability.

Every exertion was made by appellee to save his property from the flames, but unavailingly. Appellant must pay its insured value.

Although appellee's first instruction is faulty, being too broad in its scope, yet the jury could not be misled by it, and the merits being so clearly with appellee, we would not reverse for this error.

Justice has been done, and the judgment must be affirmed.

*Judgment affirmed.*